UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOANG MINH TRAN,<br><br>                Plaintiff,<br><br>v.<br><br>WILLIAM D. GORE, et al.,<br><br>                Defendants. | Civil No.   10cv464-GPC (DHB)<br><br>**REPORT AND RECOMMENDATION: GRANTING DEFENDANT JOHN GILL, M.D.'S MOTION FOR SUMMARY JUDGMENT**<br><br>**[ECF No. 204]** |

      Currently before the Court is Defendant John Gill M.D.'s Motion for Summary Judgment. (ECF No. 204.) Plaintiff has opposed the motion (ECF No. 224), and Defendant has filed a reply. (ECF No. 226.) The Court has considered the parties submissions and the supporting documentation, and for the reasons set forth below, hereby **RECOMMENDS** that Defendant John Gill M.D.'s Motion for Summary Judgment be **GRANTED**.

## I. PROCEDURAL BACKGROUND

      Plaintiff, a former state prisoner, is proceeding *pro se* in a civil rights action filed under 42 U.S.C. § 1983. Plaintiff alleges his Eighth and Fourteenth Amendment rights were violated on three separate occasions while he was in pretrial custody.

///

The first event – which is the only event that involves Dr. Gill and is the only event implicated in the current motion – occurred in January 2009. Plaintiff alleges that Dr. Gill was deliberately indifferent to his serious medical needs for not prescribing Plaintiff the anti-seizure medication Dilantin. Plaintiff claims he had requested Dilantin for a seizure disorder, but his requests were ignored. Thereafter, Plaintiff suffered a seizure on January 4, 2009, which resulted in emergency medical treatment.

The second incident occurred in February 2009. Plaintiff asserts that on February 2, 2009, he was assaulted by a transportation deputy while traveling to the courthouse in a prison bus. Plaintiff claims the attack caused him to suffer a ruptured hernia that required surgery. The third incident occurred in March 2009. Plaintiff alleges that on March 2, 2009, he was assaulted by three deputies in his prison cell.

Plaintiff initiated this lawsuit on March 2, 2010. (ECF No. 1.) On May 5, 2011, Plaintiff filed a First Amended Complaint ("FAC"). (ECF No. 34.) In the FAC, Plaintiff named several additional Defendants, including Dr. Gill. (ECF No. 34.) On May 25, 2012, Plaintiff was permitted to filed a Second Amended Complaint ("SAC") that substituted Robert Callahan for Defendant Doe Hanson. (*See* ECF Nos. 79, 131.)

On July 10, 2012, Dr. Gill filed an Answer to the SAC. (ECF No. 142.) On August 15, 2012, the Court granted Dr. Gill's request to modify the Court's Scheduling Order to allow him time to conduct discovery and file dispositive motions. (ECF No. 156.) On January 17, 2013, the Court granted Dr. Gill's Ex Parte Application to extend his pretrial motions deadline. (ECF No. 184.)

On February 19, 2013 Dr. Gill filed the instant Motion for Summary Judgment. (ECF No. 204.) On May 30, 2013, Plaintiff filed a Response.[1] (ECF No. 224) Dr. Gill filed a Reply on June 7, 2013. (ECF No. 226.)

---

[1] In his Response, Plaintiff indicates he is also requesting a competency hearing. (ECF No. 224.) He attaches several exhibits, apparently in support of that request. (ECF No. 224 at 13-58.) The Court has already considered and denied Plaintiff's request for a competency hearing. (ECF No. 216.) Plaintiff has not presented any information in his Response that would cause the Court to reconsider its prior decision. Therefore, to the extent Plaintiff is moving for a competency hearing, his request is **DENIED**.

## II. FACTUAL ALLEGATIONS

Plaintiff alleges that Dr. Gill was deliberately indifferent to his serious medical needs from October 30, 2008 to January 4, 2009, because he did not prescribe Plaintiff the anti-seizure medication Dilantin. (ECF No. 34 at 5; ECF No. 79 at 3[2].) Plaintiff states he filed numerous requests for medical attention and grievances about not receiving Dilantin. (*Id.* at 6.) Plaintiff claims that Dr. Gill was aware of his grievances but failed to act. (*Id.*) Plaintiff also claims that he yelled at facility nurses for his seizure medication, but they ignored him, and refused to issue his medication. (*Id.*; ECF No. 34-1 at 8.) Plaintiff states that as a result, on January 4, 2009, he suffered an epileptic seizure and was taken by ambulance to the emergency room. (ECF No. 34 at 6.) Plaintiff alleges that tests at the hospital showed the level of Dilantin in his blood was insufficient. (*Id.* at 6.)

In late 2008 and early 2009, Plaintiff was a pretrial detainee at the George F. Bailey Detention Facility (the "Facility"). (ECF No. 34-1 at 1-2.) On October 10, 2008, a Medical Intake Form was filled out for Plaintiff. (ECF No. 204-3 at 5-11.) The form indicates that Plaintiff answered "no" to the questions asking whether he had/has seizures, other medical problems, or was currently taking any medications. (*Id.* at 6-7, 11.) On October 31, 2008, Plaintiff submitted a Medical Request form, requesting "Seizures Medication, Please!" (*Id.* at 12.) On November 13, 2008, Plaintiff submitted a grievance report indicating that during the prior fourteen days, he had requested to see a doctor three times for seizures/epilepsy and he needed medical attention for his chronic illness. (*Id.* at 13.) Thereafter, Plaintiff was scheduled for a medical appointment on November 23, 2008. (*Id.* at 18.) Plaintiff's medical appointment was subsequently rescheduled seven times due to scheduling and security issues. (*Id.* at 18-20.)

Dr. Gill works at George F. Bailey Detention Facility on a rotating shift basis. (ECF No. 204-4 at 1, ¶ 1.) Dr. Gill is one of several doctors who provide medical services on a shift basis at the Facility. (*Id.*) Dr. Gill typically works one 8 hour shift,

---

[2] In the SAC, Plaintiff re-alleges and incorporates by reference, the allegations from his FAC. (ECF No. 79 at 4.)

four times per month. (*Id.*) The Facility controls the scheduling of inmates for medical appointments, and the doctors do not determine who they see or when. (*Id.* at 2, ¶3.) Because the doctors work on a shift basis, they do not have patients assigned to them in an ongoing way. (*Id.* at 11 ¶ 5.) Dr. Gill is not involved in the daily distribution of medication to inmates at the Facility. (*Id.* at 3, ¶ 8.)

On December 14, 2008, Plaintiff was seen by Dr. Gill. (ECF No. 204-3 at 19.) This was the only time Dr. Gill examined Plaintiff. (ECF No. 204-4 at 2, ¶6.) Plaintiff reported he had a history of seizures and complained of a runny nose. (ECF Nos. 204-3 at 19; 204-4 at 2, ¶6.) Based on his history, Dr. Gill prescribed the anti-seizure medication Dilantin to Plaintiff. (*Id.*) Dr. Gill administered a 500 mg loading dosage of Dilantin that same day. (*Id.*) He also ordered daily administrations of Dilantin, and ordered that Plaintiff's Dilantin levels be checked. (*Id.*)

The medical records submitted by Dr. Gill indicate that Plaintiff received Dilantin eleven times between December 15, 2008 and January 4, 2009. (ECF No. 204-4 at 7.) On December 29, 2008, while working a shift at the Facility, Dr. Gill performed a chart check on Plaintiff. (ECF No. 204-4 at 3, ¶ 7.) Facility staff had questioned the Dilantin prescription because Plaintiff's medical intake form stated he didn't have seizures. (ECF Nos. 204-3 at 25; 204-4 at 3, ¶ 7.) Dr. Gill instructed the staff to continue administering the Dilantin, and explained that he had diagnosed Plaintiff with a history of seizures. (*Id.*)

Frank Mannix, M.D. submitted an expert declaration on behalf Dr. Gill. (ECF No. 204-4 at 10-15.) Dr. Mannix opined that Dilantin was the appropriate medication to prescribe for treating seizures. (*Id.* at 12, ¶ 9.) Dr. Mannix further stated that when Dilantin is administered, the patient's blood must be drawn and analyzed to ensure the patient receives the proper amount of medication. (*Id.*) If a patient's Dilantin levels are not monitored (i.e., the patient refuses to allow blood draws) the standard practice is to continue to administer smaller doses of Dilantin and watch the patient for symptoms like

lethargic behavior, which would indicate the patient is receiving too much Dilantin. (*Id.* at 12, ¶ 9, 11.)

Between December 15, 2008 and January 4, 2009, Plaintiff refused multiple blood draws to check his Dilantin levels. (ECF Nos. 204-3 at 21; 204-4 at 20-24) Specifically, Plaintiff refused blood draws on December 21, 2008, December 24, 2008, December 29, 2008, December 30, 2008, and January 1, 2009. (*Id.*) Three of those times, Plaintiff expressly acknowledged that he was refusing blood draws for his Dilantin levels. (ECF No. 204-4 at 21, 23, and 24.) On December 30, 2008, Facility staff requested a chart check due to Plaintiff's persistent blood draw refusals. (ECF No. 204-3 at 26.) The physician on duty, Dr. Latham, recommended that Plaintiff be scheduled for a medical appointment in the clinic to address the issue. (*Id.*)

On January 4, 2009, Plaintiff suffered a seizure in the presence of an attending psychiatrist. (ECF Nos. 204-3 at 29; 204-4 at 25.) Plaintiff was immediately taken to the hospital. (ECF No. 204-3 at 29.) At the hospital, Plaintiff's blood was drawn and Dilantin was present in his system. (ECF Nos. 204-3 at 4; 204-4 at 29-30.) Plaintiff was given 1000 mg of Dilantin at the hospital and returned to the Facility that same day. (ECF No. 204-3 at 27; 204-4 at 28.) The medical records from the hospital note that Plaintiff was non-compliant in taking his Dilantin medication and refused Dilantin level checks. (ECF No. 204-4 at 28, 30.)

On January 5, 2009, Plaintiff had a followup appointment at the Facility and was seen by Dr. Adams. Plaintiff indicated that he would start taking his Dilantin. (ECF No. 204-3 at 35.)

## III. DISCUSSION

### A. Legal Standard for Motion for Summary Judgment

Summary judgment is appropriate under Rule 56(c) where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to solve the parties' differing versions of the truth." *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982).

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Id.* at 322-23. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The burden then shifts to the non-moving party to establish, beyond the pleadings, that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. To successfully rebut a properly supported motion for summary judgment, the non-moving party "must point to some facts in the record that demonstrate a genuine issue of material fact and, with all reasonable inferences made in the [non-moving party's] favor, could convince a reasonable jury to find for the [nonmoving party]." *Reese v. Jefferson School Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir. 2000) (citing Fed. R. Civ. P. 56; *Celotex*, 477 U.S. at 323; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). *See also Galen v. County of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007) (noting that the non-moving party may defeat summary judgment if she makes a showing sufficient to establish a question of material fact requiring a trial to resolve). "To defeat a summary judgment motion ..., the non-moving party 'may not rest upon the mere allegations or denials' in the pleadings." Fed. R. Civ. P. 56(e). Further, the non-moving party cannot create a genuine issue of material fact by simply making argumentative assertions in legal memoranda. *S.A. Empresa, Etc. v. WalterKidde & Co.*, 690 F.2d 1235, 1238 (9th Cir. 1982). Instead, the non-moving party must "go beyond the pleadings and by her own

affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. Conclusory allegations without supporting evidence are insufficient to create an issue of material fact. *Hansen v. Untied States*, 7 F.3d 137, 138 (9th Cir. 1993). A verified complaint or motion may be used as an opposing affidavit under Rule 56 to the extent it is based on personal knowledge and sets forth specific facts admissible in evidence. *McElyea v. Babbitt*, 833 F.2d 196, 197-98 (9th Cir. 1987) (per curiam); *Johnson v. Meltzer*, 134 F.3d 1393, 1399-1400 (9th Cir. 1998). To "verify" a complaint, the plaintiff must swear or affirm that the facts in the complaint are true "under the pains and penalties of perjury." *Schroeder v. McDonald*, 55 F.3d 454, 460 n.10 (9th Cir. 1995).

"The district court may limit its review to the documents submitted for the purpose of summary judgment and those parts of the record specifically referenced therein." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001). Therefore, the Court is not obligated "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citing *Richards v. Combined Ins. Co. of Am.*, 55 F.3d 247, 251 (7th Cir. 1995)). If the moving party fails to discharge this initial burden, summary judgment must be denied and the Court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

**B.     Deliberate Indifference to Serious Medical Needs**

Claims by pretrial detainees are analyzed under the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979). However, because pretrial detainees' rights under the Fourteenth Amendment are comparable to prisoners' rights under the Eighth Amendment, the Ninth Circuit applies the same standards to a pretrial detainee's claims. *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998).

Deliberate indifference to an inmate's serious medical needs "may appear when

prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds by WMX Technologies v. Miller*, 104 F.3d 1133 (9th Cir. 1997). "A determination of 'deliberate indifference' involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." *Id.* Thus, to state a claim for deliberate indifference, Plaintiff must first demonstrate the existence of a serious medical condition of which the prison officials should have been aware. *Id.* A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Thus, the "existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment." *McGuckin*, 974 F.2d at 1059-60.

Second, in order to show deliberate indifference, Plaintiff must establish that prison officials had a "sufficiently culpable state of mind." *Wallis v. Baldwin*, 70 F.3d 1074, 1076 (citing *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)). Under the second prong, the inmate must show (1) that the defendant purposefully ignored or knowingly failed to respond to his pain or medical need, and (2) harm caused by the indifference. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *McGuckin*, 974 F.2d at 1060. The indifference to medical needs also must be substantial; inadequate treatment due to malpractice, or even gross negligence, does not amount to a constitutional violation. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990). Moreover, differences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnosis and treatment are not enough to establish a deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

**C. Analysis**

Dr. Gill contends there is no evidence indicating he was deliberately indifferent to any serious medical need of Plaintiff. Therefore, Dr. Gill argues he is entitled to summary judgment on Plaintiff's deliberate indifference claim. (ECF No. 204-1 at 5-7.)

In this case, no party disputes that Plaintiff's seizure disorder was a serious medical condition. Therefore, the Court finds that Plaintiff has sufficient evidence that he had a serious medical need. However, Plaintiff has not presented any evidence from which a reasonable jury could conclude that Dr. Gill purposefully ignored or failed to respond to Plaintiff's medical needs. To establish deliberate indifference, "there must be a purposeful act or failure to act on the part of the defendant." *McGuckin*, 974 F.2d at 1060. An official must be "aware of the facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002), *citing Farmer v. Brennan*, 511 U.S. 825, 835 (1994). Negligence is insufficient. *Id.*

Plaintiff alleges that Dr. Gill was deliberately indifferent to his serious medical needs because he did not prescribe Plaintiff the anti-seizure medication Dilantin. (ECF No. 34 at 5.) However, Plaintiff's claim is belied by the record. The undisputed facts show that Dr. Gill prescribed Dilantin for Plaintiff the first time he saw Plaintiff on December 14, 2008 (ECF No. 204-3 at 19, 204-4 at 2, ¶ 6), Plaintiff received his Dilantin (ECF No. 204-4 at 7), Dr. Gill performed a chart check confirming the prescription (ECF No. 204-3 at 25; 204-4 at 3, ¶ 7), and Dilantin was present in Plaintiff's system on the date of his seizure. (ECF No. 204-3 at 4; 204-4 at 29-30.)

To the extent Plaintiff complains about the delay in receiving a Dilantin prescription from the time that he was taken into custody until December 14, 2008, he has not shown any evidence that the delay was attributable to Dr. Gill. Nor has he shown that Dr. Gill had any knowledge of Plaintiff's seizure disorder prior to examining Plaintiff on December 14, 2008. Upon intake into the Facility, Plaintiff answered "no" to the questions asking whether he had seizures, other medical problems, or was taking

medication. (ECF No. 204-3 at 6-7, 11.) Plaintiff first requested seizure medication on October 30, 2008. (ECF No. 204-3 at 12.) Due to scheduling and security issues, Plaintiff was not seen in the clinic until December 14, 2008. (ECF No. 204-3 at 18-20.) Dr. Gill states in his sworn declaration that he does not have any authority over the scheduling of medical appointments for inmates, and that it is common for appointments to be rescheduled due to security concerns. (ECF No. 204-4 at 2, ¶¶ 2-3.)

To the extent Plaintiff's claim rests on his allegation that his Dilantin level was too low, at most his claim is for medical malpractice, which does not constitute deliberate indifference. *See Estelle*, 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Moreover, Plaintiff has not presented any evidence that Dr. Gill was aware that Plaintiff's Dilantin level may have been insufficient. Dr. Gill prescribed Dilantin to Plaintiff and also ordered blood testing to monitor his levels. (ECF No. 204-3 at 19.) However, Plaintiff repeatedly refused the blood draws, thereby preventing medical staff from ensuring his levels were sufficient. (ECF Nos. 204-4 at 20-24; 204-4 at 12, ¶ 9.)

In his opposition to the Motion for Summary Judgment, Plaintiff claims Dr. Gill was deliberately indifferent to his medical needs because he failed to "make absolutely sure" Plaintiff was administered Dilantin.[3] (ECF No. 224 at 10.) However other than making this bare allegation, Plaintiff has not pointed to any evidence that there were other actions Dr. Gill could have taken, or what those actions would have been. *See Estate of Tucker ex rel. Tucker*, 515 F.3d at 1033 n.14 ("bare allegations without evidentiary support are insufficient to survive summary judgment"). Dr. Gill prescribed Dilantin for

---

[3]Plaintiff's Response is a combined opposition to both Defendants Ortega and Marina's Motion for Judgment on the Pleadings and Dr. Gill's Motion for Summary Judgment. The Court addressed Plaintiff's arguments regarding Defendants Ortega and Marina separately in the Report and Recommendation on their Motion for Judgment on the Pleadings. (*See* ECF No. 233.)

1 | Plaintiff and he confirmed via a chart check that Plaintiff was to receive the medication. (ECF No. 204-3 at 19, 25.) Dr. Gill states in his sworn declaration that he is not involved in the daily distribution of medications at the Facility. (ECF No. 204-4 at 3, ¶ 8.) Plaintiff has not presented any evidence to dispute these facts. Even assuming Plaintiff was not administered his medication as prescribed, that does not arise to deliberate indifference on the part of the Dr. Gill, as Plaintiff has presented no evidence that Dr. Gill knew he wasn't getting his medication. As to Plaintiff's allegations that he was yelling and demanding to be given Dilantin, he has not shown any evidence that Dr. Gill was present or knew that Plaintiff had been shouting about his medication. Moreover, the undisputed facts indicate Plaintiff was receiving Dilantin. The medical records show he received Dilantin eleven times between December 15, 2008 and January 4, 2009. (ECF No. 204-4 at 7.) Further, as Plaintiff acknowledges, he had Dilantin in his system on the day of his seizure. (ECF Nos. 34 at 6; 204-3 at 4; 204-4 at 29-30.)

Under *Celotex*, 477 U.S. 317, the nonmoving party cannot withstand a motion for summary judgment if that party fails to make a "showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. Here, the Court finds Dr. Gill has adequately shown an absence of probative evidence to support Plaintiff's deliberate indifference claim. Therefore, summary judgment is appropriate.

Accordingly, the Court hereby **RECOMMENDS** that Dr. Gill's Motion for Summary Judgment be **GRANTED**.

## IV. CONCLUSION AND RECOMMENDATION

After a thorough review of the record in this matter and based on the foregoing analysis, this Court **RECOMMENDS** Defendant John Gill, M.D.'s Motion for Summary Judgment be **GRANTED**.

This Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1) and Civil Local Rule 72.1(d).

1. IT IS HEREBY ORDERED that **no later than August 2, 2013**, any party may file and serve written objections with the Court and serve a copy on all parties. The documents should be captioned "Objections to Report and Recommendation."

IT IS FURTHER ORDERED that any reply to the objections shall be filed and served **no later than ten days** after being served with the objections. The parties are advised that failure to file objections within the specific time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

**IT IS SO ORDERED.**

DATED: July 18, 2013

DAVID H. BARTICK
United States Magistrate Judge